UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVA MALM,

                Plaintiff,                Civil Action No. 17-11241
                                                Honorable Arthur J. Tarnow
                                                Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 18]**

      Plaintiff Eva Malm ("Malm") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #14, 18), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

      For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Malm was not disabled under the Act prior to January 10, 2016. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #18**) be **GRANTED**, Malm's Motion for Summary Judgment (**Doc. #14**) be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Malm filed prior applications for DIB and SSI on March 9, 2011.  (Tr. 78).  On March 13, 2013, ALJ Andrew Henningfeld issued a decision denying those applications.  (Tr. 78-87).  On June 24, 2014, the Appeals Council denied review.  (Tr. 92-96).

Malm then filed new applications for DIB and SSI on August 11, 2014, alleging disability as of March 14, 2013.  (Tr. 205-17).  At the time of that alleged onset date, Malm was 47 years old.  (Tr. 244).  She had completed high school but had no further education.  (Tr. 250).  Malm has prior work history as a laborer and press operator, but she stopped working in January 2014 because of her medical conditions.  (Tr. 249-50).  She alleges disability as a result of diabetes (and resulting neuropathy), arthritis, fibromyalgia, and left ankle pain.  (Tr. 249).

After Malm's August 2014 applications for SSI and DIB were denied at the initial level on September 9, 2014 (Tr. 126-29, 136-39), she timely requested an administrative hearing, which was held on November 12, 2015, before ALJ Terry Banks.  (Tr. 36-74).  Malm, who was represented by attorney Nicole Thompson, testified at that hearing, along with vocational expert Joseph Thompson.  (*Id.*).  On March 7, 2016, ALJ Banks issued a partially favorable written decision. (Tr. 16-31).  Specifically, ALJ Banks concluded that Malm was not disabled prior to January 11, 2016; however, she became disabled as of that date and continued to be disabled through the date of the decision.  (Tr. 30).  On February 22, 2017, the Appeals Council denied review.  (Tr. 1-5).  Malm timely filed for judicial review of the final decision on April 20, 2017.  (Doc. #1).

### B.    Relevant Medical Evidence[1]

---

[1] **Because Malm only challenges ALJ Banks' findings regarding her ability to finger and handle, the Court will focus primarily on the medical evidence related to her hands and**

On May 17, 2013, Malm was seen by Toms Mathew, M.D. for diabetes, arthralgia, and paresthesia. (Tr. 313). An examination of the upper extremities revealed arthritic changes in the DIP joint (finger), but no other abnormalities. (Tr. 314). She retained full strength, bulk, and tone in both upper extremities, and both hands were non-tender without crepitus or defects. (*Id.*). At a follow-up visit to Dr. Mathew on July 29, 2013, examination results remained the same, aside from diminished sensation in her hands. (Tr. 325-26). Dr. Mathew saw Malm on at least eleven more occasions between October 2013 and September 2015; at each of these visits, there were no positive examination findings related to her hands or fingers. (Tr. 329, 339, 345, 350, 491, 497, 501, 505, 509, 513, 524).

Beginning in February 2014, Malm was seen by Zeinab Saleh, M.D., with complaints of musculoskeletal pain. (Tr. 353-65). She complained of swelling and tingling in her hands, but noted that she had been taking Tylenol #3 with some relief. (Tr. 353). On examination, Malm had no swelling in her elbows, wrists, or finger joints. (Tr. 354). Her hand grip strength was 4/5, and there was no sign of synovitis. (*Id.*). On March 6, 2014, Malm reported that she had been stable, and a physical examination of her hands remained unchanged. (Tr. 360-61). Dr. Saleh prescribed Neurontin and Tramadol. (Tr. 362). On August 1, 2014, Malm reported that she had stopped taking this medication after one month and was taking Tylenol #3 instead. (Tr. 363). On examination, her hand grip strength remained 4/5, muscle strength and sensation remained intact, and she was again started on Neurontin. (Tr. 364-65).

Malm was in a car accident in November 2014, after which she began treating with Judy Macy, M.D., a physical medicine and rehabilitation specialist. (Tr. 480-81). On December 3, 2014, Malm reported pain in her neck and upper back; difficulty moving her cervical spine, upper back, and lower back; and numbness and tingling in her hands and feet. (*Id.*). She was

---

**fingers.**

diagnosed with cervical and thoracic spine injuries, and Dr. Macy issued a note saying she was unable to work in the factory job she had recently started and needed help with household replacement services. (*Id.*). In both December 2014 and January 2015, Malm saw Dr. Macy with continued complaints of pain in her neck and back, but no complaints related to her hands. (Tr. 474, 479). On both occasions, Dr. Macy again noted that Malm was unable to work. (*Id.*).

On February 10, 2015, Malm returned to Dr. Macy, reporting that she had a great deal of pain in her neck and spine, which radiated into her extremities (right more than left). (Tr. 475). Noting that Malm's neck and right upper extremity seemed to hurt her the most, Dr. Macy ordered an EMG. (*Id.*). At her next visit, on February 24, 2015, Malm had pain in the back of her neck radiating to both arms and right shoulder, with numbness and tingling in the arms. (Tr. 469). Along with problems moving both shoulders, Malm also had "atrophy of the right opponens pollicis muscle more so than the left." (*Id.*). According to Dr. Macy, EMG testing of the bilateral upper extremities revealed "[v]ery severe right carpal tunnel syndrome with absence of the right median sensory distal latency and evidence of axonal loss in the right opponens pollicis muscle and a large in the right median motor distal latency"; moderate left carpal tunnel syndrome; and "evidence of bilateral cervical radiculopathy… mostly in the left C6 distribution, but also affecting the right upper extremity as well and approximately in the right C6 distribution." (Tr. 470).

On March 10, 2015, Malm continued to report pain in her neck, mid-back, and lower back, as well as her right shoulder. (Tr. 471). There were no complaints related to her hands. (*Id.*). Dr. Macy referred Malm for a surgical opinion regarding her shoulder. (*Id.*).

On April 2, 2015, Malm saw Jerome Ciullo, M.D. for a surgical consult related to her right shoulder. (Tr. 403-06). Malm complained to Dr. Ciullo of a stiff and painful neck,

4

diabetes, and leg and ankle swelling, but did not complain about her hands. (Tr. 404). During the examination, Malm reported being able to perform the following activities as normal or with only a mild compromise: use her back pocket, rectal hygiene, wash opposite underarm, eat with a utensil, comb hair, use hand/arm at shoulder level, carry 10-15 pounds, dress, and reach overhead. (Tr. 403). Dr. Ciullo diagnosed Malm with right shoulder A/C joint arthritis, rotator cuff tear, biceps tendon partial detachment, and overuse of the neck muscles to compensate. (Tr. 406). He recommended outpatient surgery. (*Id.*).

Malm returned to see Dr. Macy in April, May, and June 2015, complaining each time of neck and back pain. (Tr. 466-68). She did not complain about her hands at any of these visits. (*Id.*). On August 13, 2015, Malm again saw Dr. Macy, complaining of pain in her neck and lower back, as well as numbness and tingling radiating from her neck down both arms. (Tr. 465).[2]

### C. The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI and DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

---

[2] Over the years, Malm was also seen at the emergency room for various musculoskeletal complaints, none of which were related to her hands. (Tr. 538-681).

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ found Malm disabled as of January 11, 2016, the date she attained the age of 55, but not disabled between her alleged onset date of March 14, 2013, and January 10, 2016. (Tr. 16-31). At Step One, the ALJ found that Malm did not engage in substantial gainful activity between her alleged onset date (March 14, 2013) and her date last insured (March 31, 2015). (Tr. 19). At Step Two, the ALJ concluded that she has the severe impairments of diabetes mellitus, peripheral neuropathy, degenerative disc disease, right torn rotator cuff, carpal tunnel syndrome, and osteoarthritis. (*Id.*). At Step Three, the ALJ found that Malm's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 21).

The ALJ then assessed Malm's residual functional capacity ("RFC"), concluding that, since March 14, 2013, she has been capable of performing sedentary work with the following additional limitations: cannot stand or walk for more than ten minutes in any given hour; can never use foot controls; can never climb ladders, ropes, or scaffolds, or balance on uneven, narrow, or slippery surfaces; can occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl; can frequently handle and finger; can never reach overhead with the right arm; cannot tolerate exposure to concentrated levels of atmospheric conditions, such as fumes, noxious odors, gases, and poor ventilation; cannot use vibrating objects or surfaces to complete tasks; cannot perform work that requires far acuity; limited to unskilled work, defined as work that needs little to no judgment to perform simple duties; work must be routine and repetitive involving only a few, if any, changes in the work setting; and cannot tolerate exposure to hazards such as dangerous moving mechanical parts or machinery that could cause bodily injury or work in high, exposed places. (Tr. 23).

At Step Four, the ALJ found that, since March 14, 2013, Malm has been incapable of performing her past relevant work. (Tr. 28). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that, prior to January 11, 2016, Malm was capable of performing the jobs of order clerk (100,000 jobs nationally), bench worker (12,000 jobs), and assembler (24,000 jobs). (Tr. 29-30). As a result, the ALJ concluded that, prior to January 11, 2016, the date on which Malm attained age 55, she was not disabled under the Act. (*Id.*).

    **D.**    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**E.     Analysis**

In this case, in relevant part, ALJ Banks found that Malm retains the RFC to perform a reduced range of sedentary work that involves *frequent handling and fingering*.  (Tr. 23).  In reaching this conclusion, ALJ Banks appropriately cited *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), noting that, absent new and material evidence of a change in condition, he was unable to determine an RFC different from that previously assessed by ALJ Henningfeld. (Tr. 16, 25).  ALJ Banks then recognized that Malm had "proffered new evidence regarding a diagnosis of carpal tunnel syndrome."  (Tr. 26).  However, he found this evidence immaterial, because it did not show "a worsening in [Malm's] condition or functional abilities."  (*Id.*).  Malm now argues that her upper extremity conditions have, in fact, worsened since ALJ Henningfeld's decision and, therefore, that ALJ Banks erred in concluding that her "carpal tunnel syndrome is adequately accommodated by Judge Henningfeld's determination that [she] is limited to sedentary work except she can frequently handle and finger …."  (*Id.*).

It is clear that ALJ Banks was bound to adopt ALJ Henningfeld's RFC assessment and disability conclusion "absent changed circumstances."  *Drummond*, 126 F.3d at 842 ("We reject the Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence.").  Applying *Drummond*, courts have held that to avoid the preclusive effect of a prior ALJ decision, the claimant must produce not only new and material evidence, but that evidence must also show that the claimant's condition worsened since the prior decision.  *See, e.g., Drogowski v. Comm'r of Soc. Sec.*, 2011 WL 4502988, at *8 (E.D. Mich. July 12, 2011) ("Plaintiff misapprehends the scope of [the *Drummond*] test.  Plaintiff must not merely present new and material evidence, but that evidence must show that plaintiff's condition *deteriorated* from the state of her condition at

9

the time the ALJ made the decision.") (emphasis in original); *Makinson v. Colvin*, 2013 WL 4012773, at *5 (N.D. Ohio Aug. 6, 2013) ("In order to avoid the application of *Drummond*, a claimant must present evidence showing that her symptoms have changed since the time of the Commissioner's prior determination.").

Here, ALJ Banks' RFC finding regarding the manipulative limitations of handling and fingering is supported by the record. As set forth above, and as ALJ Banks acknowledged, EMG testing conducted in February 2015 – after ALJ Henningfeld's decision – revealed "[v]ery severe right carpal tunnel syndrome with absence of the right median sensory distal latency and evidence of axonal loss in the right opponens pollicis muscle and a large in the right median motor distal latency"; moderate left carpal tunnel syndrome; and "evidence of bilateral cervical radiculopathy… mostly in the left C6 distribution, but also affecting the right upper extremity as well and approximately in the right C6 distribution." (Tr. 26 (quoting Tr. 470)). Given this evidence, ALJ Banks properly determined that Malm's carpal tunnel syndrome was a new severe impairment. (Tr. 19).

Courts have recognized, however, that the "mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes on an individual." *Drogowski*, 2011 WL 4502955, at *3 (internal quotations omitted). And here, although the *diagnosis* of carpal tunnel syndrome was new, Malm had complained about problems with her hands well prior to this diagnosis. (Tr. 26, 47, 59, 84). Indeed, these earlier complaints were considered by ALJ Henningfeld, who specifically noted that Malm suffered from peripheral neuropathy and osteoarthritis in her hands, with complaints of "constant numbness and a tingling feeling in her hands[.]" (Tr. 84, 85). As a result, ALJ Henningfeld found that Malm was limited to no more than frequent handling and fingering. (Tr. 84).

10

Similarly, Dr. Ramirez-Jacobs, the non-examining state agency physician, considered these complaints and also opined that Malm was capable of frequent handling and fingering.[3] (Tr. 27-28, 104).

As ALJ Banks noted, even after her new carpal tunnel syndrome diagnosis, Malm underwent only very conservative treatment (consisting of medication). (Tr. 26, 467-68). As ALJ Banks further noted, there is no evidence that Malm underwent splint treatment, used compression gloves, or had carpal tunnel release surgery (or even that any of these treatments were considered). (Tr. 26). Again, both before and after her carpal tunnel syndrome diagnosis, Malm received only medication for her hand pain. (Tr. 26, 84). It was reasonable for ALJ Banks to consider this fact in concluding that Malm had not established any greater *functional limitations* with respect to handling and fingering. *See, e.g., Kerspilo v. Comm'r of Soc. Sec.*, 2015 WL 1469461, at *17 (E.D. Mich. Mar. 19, 2015) (allowing for the consideration of conservative treatment and absence of surgery as a factor when evaluating the plaintiff's complaints of pain).[4]

---

[3] As ALJ Banks recognized, evidence of the diagnostic testing for carpal tunnel syndrome was added to the record after Dr. Ramirez-Jacobs opined as to Malm's functional limitations. (Tr. 27-28). However, ALJ Banks reasonably found that the record did not support more restrictive limitations on handling and fingering. (Tr. 26-28). Thus, the ALJ did not err in relying on Dr. Ramirez-Jacobs' opinion in this respect. *See Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) ("[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record.")).

[4] As ALJ Banks further noted, Malm's treatment after both ALJ Henningfeld's decision and Dr. Ramirez-Jacobs' opinion primarily focused on her other impairments – namely, her torn rotator cuff and pain in her cervical, lumbar, and thoracic spine. (Tr. 26). ALJ Banks addressed Malm's neck, back, and shoulder impairments throughout his decision (Tr. 23-28), and Malm does not specifically challenge the findings related to these impairments. Rather, she states only that there was no opinion evidence addressing these impairments, and that they may have contributed to more significant limitations on her ability to handle and finger. (Doc. #14 at 21). Aside from referencing the diagnostic testing and her own complaints, however, Malm has not pointed to any evidence supporting greater functional limitations as a result of these

Moreover, as set forth above, there are very few physical examination findings related to Malm's hands and fingers in the record. (Tr. 26). And, the records that do exist support this aspect of the ALJ's decision. For instance:

- Treatment with Dr. Mathew revealed that her hands had full strength, no digital clubbing, were non-tender, and there were no positive examination findings related to Malm's hands or fingers, aside from continued arthritic changes in the DIP joint and one notation of diminished sensation in her hands. (Tr. 314, 325-26, 329, 339, 345, 350, 491, 497, 501, 505, 509, 513, 524).

- Treatment with Dr. Saleh revealed tenderness in the Malm's wrists and joints, but there was no swelling or synovitis, her hand grip strength remained 4/5, and she had intact muscle strength and sensation. (Tr. 354, 360-61, 364-65).

- Treatment with Dr. Ciullo revealed no complaints of hand or finger pain. (Tr. 403-06), Dr. Ciullo reported that Malm was able to perform the following activities as normal or with only a "mild compromise": use her back pocket, rectal hygiene, wash opposite underarm, eat with a utensil, comb hair, use hand/arm at shoulder level, carry 10-15 pounds (with her arm at her side), dress, and reach hand overhead. (Tr. 403).

- Treatment with Dr. Macy revealed sporadic complaints of numbness and tingling in Malm's hands (Tr. 465, 469, 475, 480), but as Dr. Macy stated "[o]f all of [Malm's] pain complaints, [her cervical and thoracic spine injuries] seem to be what hurts her the most." (Tr. 481). Most often, there were no complaints or examination findings related to Malm's hands or fingers. (Tr. 464, 466, 466-68, 471, 474, 479).

In the face of this evidence, Malm's only real argument – that ALJ Banks did not properly consider the opinion evidence from Dr. Macy – is unpersuasive. (Doc. #14 at 19-20). To begin with, although Dr. Macy interpreted the EMG test results as showing that Malm had very severe right carpal tunnel syndrome and moderate left carpal tunnel syndrome (Tr. 470), this diagnostic impression says nothing about any functional limitations caused by the impairment. *See McKenzie v. Comm'r Soc. Sec. Admin.*, 2000 WL 687680, at *5 (6th Cir. May 19, 2000). Malm has not identified any opinion in the record where Dr. Macy discusses her functional limitations in this respect, and, indeed, there is none.

---

impairments.

Malm does point to the "off-work restrictions" issued by Dr. Macy between December 2014 and June 2015, arguing that it is "unclear" how much weight the ALJ afforded these restrictions. (Doc. #14 at 19-20). The Court agrees with the Commissioner, though, that Dr. Macy seemed to be referring to Malm's *prior factory job* when saying she could not return to work at certain points in time. (*See* Doc. #18 at 21 (citing Tr. 474 ("She did work in a factory. I explained to her that she cannot return to **that type of work**.") (emphasis added); 480-81 (Malm "recently started working in a factory, but has not been able to work since the auto accident."))). Regardless, an off work-note is not a medical opinion that may be given controlling weight. *See Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 432 (6th Cir. 2016); *see also* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).[5]

In sum, it was Malm's burden to show that her RFC had changed with respect to her ability to handle and finger, and she failed to do so. The record reflects complaints of hand pain – treated with medication only – both before and after ALJ Henningfeld's decision. Despite a new diagnosis of carpal tunnel syndrome following that decision, Malm simply did not carry her burden of demonstrating a worsening in her condition or functional abilities. ALJ Banks properly relied on ALJ Henningfeld's decision, Dr. Ramirez-Jacobs' opinion, and subsequent treatment notes to formulate the RFC, and the Court finds no error.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

---

[5] While ALJ Banks should have explained how he considered Dr. Macy's off-work notes, *see Bass*, 499 F.3d at 511, failure to do so is not cause for remand. As set forth above, ALJ Banks reasonably discussed the medical evidence, including specifically mentioning Dr. Macy's records (Tr. 26 (citing Tr. 410-86)), which supported his RFC finding. Under the circumstances, where Dr. Macy offered no opinion on Malm's ability to perform other work, nor did she express an opinion as to any functional limitations with respect to Malm's ability to handle or finger, the Court finds that ALJ Banks' failure to explicitly discuss the off-work notes is at most harmless error.

13

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #18**) be **GRANTED**, Malm's Motion for Summary Judgment (**Doc. #14**) be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

Dated: March 23, 2018  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 23, 2018.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager