UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| EVA MALM, | Case No. 17-11241 |
| Plaintiff, | SENIOR U.S. DISTRICT JUDGE |
| v. | ARTHUR J. TARNOW |
| COMMISSIONER OF SOCIAL SECURITY, | U.S. MAGISTRATE JUDGE |
| Defendant. | DAVID R. GRAND |

**ORDER ADOPTING REPORT AND RECOMMENDATION [19]; OVERRULING PLAINTIFF'S OBJECTIONS [20]; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14]; AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]**

Plaintiff Eva Malm seeks judicial review of the decision of an Administrative Law Judge ("ALJ") denying her application for disability benefits. Plaintiff filed a Motion for Summary Judgment [Dkt. 14] on August 6, 2017. Defendant filed a Motion for Summary Judgment [18] on November 4, 2017.

On March 23, 2018, the Magistrate Judge issued a Report and Recommendation ("R&R") [19] recommending that the Court grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. Plaintiff timely filed her Objections [20] on April 2, 2018.

For the reasons stated below, the Court **ADOPTS** the Report and Recommendation [19]. Plaintiff's Objections to the Report and Recommendation

[20] are **OVERRULED**. Plaintiff's Motion for Summary Judgment [14] is

**DENIED**. Defendant's Motion for Summary Judgment [18] is **GRANTED**.

## FACTUAL BACKGROUND

The R&R summarized the record as follows:

**A. Background**

Malm filed prior applications for DIB and SSI on March 9, 2011. (Tr. 78). On March 13, 2013, ALJ Andrew Henningfeld issued a decision denying those applications. (Tr. 78-87). On June 24, 2014, the Appeals Council denied review. (Tr. 92-96).

Malm then filed new applications for DIB and SSI on August 11, 2014, alleging disability as of March 14, 2013. (Tr. 205-17). At the time of that alleged onset date, Malm was 47 years old. (Tr. 244). She had completed high school but had no further education. (Tr. 250). Malm has prior work history as a laborer and press operator, but she stopped working in January 2014 because of her medical conditions. (Tr. 249-50). She alleges disability as a result of diabetes (and resulting neuropathy), arthritis, fibromyalgia, and left ankle pain. (Tr. 249).

After Malm's August 2014 applications for SSI and DIB were denied at the initial level on September 9, 2014 (Tr. 126-29, 136-39), she timely requested an administrative hearing, which was held on November 12, 2015, before ALJ Terry Banks. (Tr. 36-74). Malm, who was represented by attorney Nicole Thompson, testified at that hearing, along with vocational expert Joseph Thompson. (*Id.*). On March 7, 2016, ALJ Banks issued a partially favorable written decision. (Tr. 16-31). Specifically, ALJ Banks concluded that Malm was not disabled prior to January 11, 2016; however, she became disabled as of that date and continued to be disabled through the date of the decision. (Tr. 30). On February 22, 2017, the Appeals Council denied review. (Tr. 1-5). Malm timely filed for judicial review of the final decision on April 20, 2017. (Doc. #1).

## B. Relevant Medical Evidence[1]

On May 17, 2013, Malm was seen by Toms Mathew, M.D. for diabetes, arthralgia, and paresthesia. (Tr. 313). An examination of the upper extremities revealed arthritic changes in the DIP joint (finger), but no other abnormalities. (Tr. 314). She retained full strength, bulk, and tone in both upper extremities, and both hands were non-tender without crepitus or defects. (*Id.*). At a follow-up visit to Dr. Mathew on July 29, 2013, examination results remained the same, aside from diminished sensation in her hands. (Tr. 325-26). Dr. Mathew saw Malm on at least eleven more occasions between October 2013 and September 2015; at each of these visits, there were no positive examination findings related to her hands or fingers. (Tr. 329, 339, 345, 350, 491, 497, 501, 505, 509, 513, 524).

Beginning in February 2014, Malm was seen by Zeinab Saleh, M.D., with complaints of musculoskeletal pain. (Tr. 353-65). She complained of swelling and tingling in her hands, but noted that she had been taking Tylenol #3 with some relief. (Tr. 353). On examination, Malm had no swelling in her elbows, wrists, or finger joints. (Tr. 354). Her hand grip strength was 4/5, and there was no sign of synovitis. (*Id.*). On March 6, 2014, Malm reported that she had been stable, and a physical examination of her hands remained unchanged. (Tr. 360-61). Dr. Saleh prescribed Neurontin and Tramadol. (Tr. 362). On August 1, 2014, Malm reported that she had stopped taking this medication after one month and was taking Tylenol #3 instead. (Tr. 363). On examination, her hand grip strength remained 4/5, muscle strength and sensation remained intact, and she was again started on Neurontin. (Tr. 364-65).

Malm was in a car accident in November 2014, after which she began treating with Judy Macy, M.D., a physical medicine and rehabilitation specialist. (Tr. 480-81). On December 3, 2014, Malm reported pain in her neck and upper back; difficulty moving her cervical spine, upper back, and lower back; and numbness and tingling in her hands and feet. (*Id.*). She was diagnosed with cervical and thoracic spine injuries, and Dr. Macy issued a note saying she was unable to work in the factory job she had recently started and needed help with household replacement services. (*Id.*). In both

---

[1] Because Malm only challenges ALJ Banks' findings regarding her ability to finger and handle, the Court will focus primarily on the medical evidence related to her hands and fingers.

December 2014 and January 2015, Malm saw Dr. Macy with continued complaints of pain in her neck and back, but no complaints related to her hands. (Tr. 474, 479). On both occasions, Dr. Macy again noted that Malm was unable to work. (*Id.*).

On February 10, 2015, Malm returned to Dr. Macy, reporting that she had a great deal of pain in her neck and spine, which radiated into her extremities (right more than left). (Tr. 475). Noting that Malm's neck and right upper extremity seemed to hurt her the most, Dr. Macy ordered an EMG. (*Id.*). At her next visit, on February 24, 2015, Malm had pain in the back of her neck radiating to both arms and right shoulder, with numbness and tingling in the arms. (Tr. 469). Along with problems moving both shoulders, Malm also had "atrophy of the right opponens pollicis muscle more so than the left." (*Id.*). According to Dr. Macy, EMG testing of the bilateral upper extremities revealed "[v]ery severe right carpal tunnel syndrome with absence of the right median sensory distal latency and evidence of axonal loss in the right opponens pollicis muscle and a large in the right median motor distal latency"; moderate left carpal tunnel syndrome; and "evidence of bilateral cervical radiculopathy… mostly in the left C6 distribution, but also affecting the right upper extremity as well and approximately in the right C6 distribution." (Tr. 470).

On March 10, 2015, Malm continued to report pain in her neck, mid-back, and lower back, as well as her right shoulder. (Tr. 471). There were no complaints related to her hands. (*Id.*). Dr. Macy referred Malm for a surgical opinion regarding her shoulder. (*Id.*).

On April 2, 2015, Malm saw Jerome Ciullo, M.D. for a surgical consult related to her right shoulder. (Tr. 403-06). Malm complained to Dr. Ciullo of a stiff and painful neck, diabetes, and leg and ankle swelling, but did not complain about her hands. (Tr. 404). During the examination, Malm reported being able to perform the following activities as normal or with only a mild compromise: use her back pocket, rectal hygiene, wash opposite underarm, eat with a utensil, comb hair, use hand/arm at shoulder level, carry 10-15 pounds, dress, and reach overhead. (Tr. 403). Dr. Ciullo diagnosed Malm with right shoulder A/C joint arthritis, rotator cuff tear, biceps tendon partial detachment, and overuse of the neck muscles to compensate. (Tr. 406). He recommended outpatient surgery. (*Id.*).

Malm returned to see Dr. Macy in April, May, and June 2015, complaining each time of neck and back pain. (Tr. 466-68). She did not complain about her hands at any of these visits. (*Id.*). On August 13, 2015, Malm again saw Dr. Macy, complaining of pain in her neck and lower back, as well as numbness and tingling radiating from her neck down both arms. (Tr. 465).

## C. The ALJ's Application of the Disability Framework Analysis

. . .

Following the five-step sequential analysis, the ALJ found Malm disabled as of January 11, 2016, the date she attained the age of 55, but not disabled between her alleged onset date of March 14, 2013, and January 10, 2016. (Tr. 16-31). At Step One, the ALJ found that Malm did not engage in substantial gainful activity between her alleged onset date (March 14, 2013) and her date last insured (March 31, 2015). (Tr. 19). At Step Two, the ALJ concluded that she has the severe impairments of diabetes mellitus, peripheral neuropathy, degenerative disc disease, right torn rotator cuff, carpal tunnel syndrome, and osteoarthritis. (*Id.*). At Step Three, the ALJ found that Malm's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 21).

The ALJ then assessed Malm's residual functional capacity ("RFC"), concluding that, since March 14, 2013, she has been capable of performing sedentary work with the following additional limitations: cannot stand or walk for more than ten minutes in any given hour; can never use foot controls; can never climb ladders, ropes, or scaffolds, or balance on uneven, narrow, or slippery surfaces; can occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl; can frequently handle and finger; can never reach overhead with the right arm; cannot tolerate exposure to concentrated levels of atmospheric conditions, such as fumes, noxious odors, gases, and poor ventilation; cannot use vibrating objects or surfaces to complete tasks; cannot perform work that requires far acuity; limited to unskilled work, defined as work that needs little to no judgment to perform simple duties; work must be routine and repetitive involving only a few, if any, changes in the work setting; and cannot tolerate exposure to hazards such as dangerous moving mechanical parts or machinery that could cause bodily injury or work in high, exposed places. (Tr. 23).

At Step Four, the ALJ found that, since March 14, 2013, Malm has been incapable of performing her past relevant work. (Tr. 28). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that, prior to January 11, 2016, Malm was capable of performing the jobs of order clerk (100,000 jobs nationally), bench worker (12,000 jobs), and assembler (24,000 jobs). (Tr. 29-30). As a result, the ALJ concluded that, prior to January 11, 2016, the date on which Malm attained age 55, she was not disabled under the Act. (*Id.*).

**STANDARD OF REVIEW**

The Court reviews "specific written objections" to a Magistrate Judge's Report and Recommendation on a dispositive motion *de novo*. *See* 28 U.S.C. §636(b)(1)(c). Vague, generalized objections are not entitled to a *de novo* review. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F.Supp. 2d 743, 747 (E.D. Mich. 2004). Similarly, an objection that simply disagrees with the Magistrate Judge's conclusion "without explaining the source of the error" is not a valid objection." *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Judicial review of a decision by a Social Security ALJ is limited to determining whether the factual findings are supported by substantial evidence and

whether the ALJ employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's factual findings "are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). So long as the ALJ's conclusion is supported by substantial evidence, a court must "defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

## ANALYSIS

Plaintiff's objections are somewhat confusing, but it appears that she claims that the Magistrate Judge erred in the following ways:

- By determining that the ALJ properly relied on the opinion of Dr. Sonia Ramirez-Jacobs, M.D.;
- By concluding that the ALJ properly accounted for her carpal tunnel syndrome in the RFC determination; and
- By finding that there was no reversible error in the consideration of Dr. Judy Macy, M.D., Plaintiff's treating source opinion.

### I. Dr. Ramirez-Jacobs' Opinion

Plaintiff argues that the ALJ was wrong to rely on the opinion of Dr. Sonia Ramirez-Jacobs, M.D., the state agency medical consultant. Plaintiff

states that Dr. Ramirez-Jacobs' opinion is an "administrative opinion" and that any reliance on it was improper because Dr. Ramirez-Jacobs never considered Plaintiff's carpal tunnel syndrome.

Plaintiff provides no explanation or support for her assertion that Dr. Ramirez-Jacobs' opinion is an "administrative opinion," and the Court finds that Plaintiff has forfeited whatever argument she intended to present for failure to develop it. *See, e.g., Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 618 n.9 (6th Cir. 2014) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). This objection is therefore overruled.

## II. RFC determination

In the second objection, Plaintiff lumps several different arguments together. Plaintiff asserts that the ALJ failed to account for her "severe impairment of carpal tunnel syndrome" and that the "ALJ could have ordered a consultative examination or medical expert to determine [her] functional limitations." (Obj. at 2). She also maintains that, despite the fact that ALJ Banks concluded that carpal tunnel syndrome is a severe impairment, he "incorrectly decided [Plaintiff's] limitations . . . based wholly on conservative treatment." *Id.* at 3.

Plaintiff's arguments are incorrect. ALJ Banks discussed Plaintiff's carpal tunnel syndrome multiple times throughout his decision. *See, e.g.*, Tr. 23,

26, 28. Additionally, the regulations do not require ALJs to order consultative examinations. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

What Plaintiff truly seems to take issue with is ALJ Banks' adoption of the RFC formulated by ALJ Henningfeld. She states that neither ALJ Henningfeld nor Dr. Ramirez-Jacobs considered her carpal tunnel syndrome, and accordingly ALJ Henningfeld's RFC assessment – as adopted by ALJ Banks – is inappropriate.

ALJ Henningfeld denied Plaintiff's DIB and SSI applications in March 2013. Plaintiff filed new applications in August 2014.

"Absent evidence of an improvement in a claimant's condition, a subsequent ALJ" – here, ALJ Banks – "is bound by the findings of a previous ALJ." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). Accordingly, "to avoid application of res judicata, [Plaintiff] must provide proof that [her] condition has worsened since the date of the prior decision to such a degree that [s]he is no longer capable of engaging in substantial gainful activity." *Butka v. Commissioner of Soc. Sec.*, No. 16-13923, 2018 WL 1442891, at *4 (E.D. Mich. Feb. 7, 2018), *report and recommendation adopted*, 2018 WL 1425950 (Mar. 22, 2018).

Both ALJ Henningfeld and ALJ Banks accounted for Plaintiff's longstanding problems with her hands, which she suffered from prior to her

carpal tunnel syndrome diagnosis. During the hearing before ALJ Banks, Plaintiff said that "for years I've been told I had neuropathy in my hands." (Tr. 59). ALJ Henningfeld also noted that Plaintiff had difficulty using her hands, due in part to "constant numbness and a tingling feeling." *Id.* at 84. He also stated in his decision that Plaintiff suffered "from both mild peripheral neuropathy and osteoarthritis in her hands." *Id.* at 85.

Plaintiff is correct that neither ALJ Henningfeld nor Dr. Ramirez-Jacobs had the opportunity to consider Plaintiff's carpal tunnel syndrome. However, ALJ Banks made note of that in his decision, and altered his evaluation accordingly. *See* Tr. 27 (Because Dr. Ramirez-Jacobs "did not have the opportunity to consider the evidence regarding the claimant's rotator cuff tear, degenerative disc disease, or carpal tunnel syndrome," ALJ Banks only "incorporated the credible portions of Dr. Ramirez-Jacobs' opinions.").

ALJ Banks recognized that Plaintiff "proffered new evidence regarding a diagnosis of carpal tunnel syndrome," but correctly determined that it was not *material* evidence. Plaintiff took medication as part of her treatment, but did not undergo splint treatment or carpal tunnel release surgery, nor did she use compression gloves. (Tr. 26); *Kerspilo v. Commissioner of Soc. Sec.*, No. 13-14476, 2015 WL 1469461, at *17 (E.D. Mich. Mar. 19, 2015) (conservative treatment and absence of surgery were relevant to the credibility analysis). In

addition, when ALJ Banks asked Plaintiff about her reasons for not working, Plaintiff said nothing about her carpal tunnel syndrome. In fact, she only mentioned carpal tunnel syndrome when asked about it by counsel. *See Villarreal v. Secretary of Health & Human Services*, 818 F.2d 461, 463 (6th Cir. 1987) ("the ALJ did not merely depend on [plaintiff's] demeanor at the hearing to determine that return to the relevant past light work was possible," but also looked to medical records, as well as the fact that "conservative treatment was successful.").

Additionally, as the Magistrate Judge explained, Plaintiff's treatment records support the ALJ's findings. Dr. Mathew stated that Plaintiff's hands were "non-tender, without crepitus or defects." (Tr. 314). Dr. Saleh ranked Plaintiff's hand grip at a 4/5. *Id.* at 361. Dr. Macy noted that "[o]f all of the patient's pain complaints, [her cervical and thoracic spine injuries] seem to be what hurt[ ] her the most." *Id.* at 481. Furthermore, treatment notes from visits with Dr. Macy between March 10, 2015 and October 8, 2015 reveal that Plaintiff did not complain about pain in her hands. *Id.* at 464-68, 471.

In short, ALJ Banks' determination is sound because there is "substantial evidence . . . that there was no worsening or change in condition of impairments that existed at the time of [ALJ Henningfeld's] prior decision." *Butka*, 2018 WL 1442891, at *5. This objection is overruled.

### III. Consideration of the treating source opinion

Plaintiff contests the ALJ's consideration of opinion evidence from Dr. Macy, Plaintiff's treating physician. She seems to imply that the ALJ failed to accord the appropriate weight to Dr. Macy's opinion.

The problem for Plaintiff, however, is that Dr. Macy never actually gave her opinion as to Plaintiff's functional limitations. It is true that Dr. Macy issued "off-work restrictions"; however, a doctor's "determination that [the patient] is 'unable to work' is not a medical opinion that may be given controlling weight." *Dutkiewicz v. Commissioner of Social Security*, 663 Fed. Appx. 430, 432 (6th Cir. 2016); 20 C.F.R. § 404.1527(d)(1), (3). Moreover, Dr. Macy specifically stated that Plaintiff could not return to factory-related work; she did not say anything about performing other, less strenuous jobs.

"[E]ven where controlling weight will not be accorded because a treating source's opinion relates to an issue reserved to the Commissioner, an ALJ still must 'explain the consideration given to the treating source's opinion(s).'" *Dutkiewicz*, 663 Fed. Appx. at 432 (quoting *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (quoting SSR 96–5p, 61 Fed. Reg. 34471, 34474 (July 2, 1996)).

The Court finds that the ALJ's failure to explicitly discuss the off-work restrictions issued by Dr. Macy was harmless error. *Id.* Dr. Macy never opined on Plaintiff's ability to perform other work or Plaintiff's functional limitations. In

addition, as mentioned previously, treatment notes from visits with Dr. Macy in the eight months after Plaintiff's diagnosis reveal that Plaintiff did not complain about pain in her hands. *Id.* at 464-68, 471. In sum, the ALJ "reasonably explain[ed] that the majority of medical evidence, the nature of [Plaintiff's] treatment, and the other medical opinions in the record showed that [Plaintiff] had the capacity to perform a limited range of sedentary work." *Dutkiewicz*, 663 Fed. Appx. at 432 (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed.Appx. 435, 440–41 (6th Cir. 2010)). Plaintiff's objection is overruled.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Report and Recommendation [19] is **ADOPTED** and entered as the findings and conclusions of the Court. Plaintiff's Objections to the Report and Recommendation [20] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [18] is **GRANTED**. Plaintiff's Motion for Summary Judgment [14] is **DENIED**.

**SO ORDERED**.

                                                s/Arthur J. Tarnow
                                                Arthur J. Tarnow
Dated: July 11, 2018                     Senior United States District Judge